NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KIRTI SOLANKI,<br><br>    Plaintiff,<br>v.<br>ASHLAND, LLC,<br><br>    Defendant. | Civil Action No.: 23-22638<br><br>**OPINION & ORDER** |

**CECCHI, District Judge.**

Before the Court is Ashland, LLC's ("Defendant" or "Ashland") motion to dismiss Kirti Solanki's ("Plaintiff") Third Amended Complaint ("TAC") pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 27. Plaintiff opposed the motion (ECF No. 34), and Defendant replied (ECF No. 35). The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons set forth below, Defendant's motion is **GRANTED**.

I.  **BACKGROUND**

This matter arises from Defendant's alleged failure to facilitate Plaintiff's return to work after her medical leave, and her subsequent termination. In October 2019, Plaintiff started working at Ashland as a Lead Scientist. TAC ¶ 9. On December 2, 2022, Plaintiff suffered an ankle injury, and was diagnosed with a high degree ankle sprain with severe nerve damage, and associated chronic regional pain syndrome. *Id.* ¶ 11. She suffered radiating pain, could not bear weight on her ankle, and could not walk without an assisting device. *Id.* ¶ 12. As a result, Plaintiff requested that she be permitted to work remotely while she recovered, which Ashland granted. *Id.* ¶¶ 13–16. Plaintiff worked remotely from December 5, 2022, through February 16, 2023. *Id.* ¶ 16.

On February 8, 2023, Plaintiff provided Ashland with a note from her physician stating that she could return to work partially, so long as she did not walk long distances or lift heavy objects. *Id.* ¶ 18. The note asserted that Plaintiff required this accommodation until March 29, 2023. *Id.* ¶ 20. Plaintiff worked with a vocational expert to provide accommodation options to Ashland to facilitate her return. *Id.* ¶ 21. However, Ashland refused these options and encouraged Plaintiff to take leave under the Family and Medical Leave Act ("FMLA") instead, because she was unable to work without restriction. *Id.* ¶¶ 23–24. Plaintiff reached out to her supervisor, Himanshu Patel, and insisted that she did not require FMLA leave, and could return to work full-time if she could use a knee scooter to traverse the lab and receive aid lifting heavy objects. *Id.* ¶ 26. Nonetheless, Ashland refused her request, and she remained on FMLA leave from February 16, 2023, through March 28, 2023. *Id.* ¶¶ 25, 27.

Around mid-March 2023, Plaintiff reached out to Ashland to coordinate her return to work, and advised that she would still need a knee scooter and a modified schedule. *Id.* ¶¶ 28–29. Plaintiff alleges that Ashland refused to engage in an interactive process with Plaintiff and declined to reinstate her. *Id.* ¶¶ 30–33. Ashland instead offered to extend her FMLA leave until she could return to work without restriction. *Id.* ¶ 33. Plaintiff remained on FMLA leave and did not reiterate her request to return with accommodation. *Id.* ¶¶ 22–35.

Plaintiff remained on FMLA leave until August 18, 2023, when Ashland terminated her employment. *Id.* ¶¶ 35–37. Ashland asserted that Plaintiff voluntarily resigned. *Id.* ¶ 38. In response, Plaintiff sent a communication to a human resources manager at Ashland stating that she did not intend to resign, and rather that she wished to return to work with minor restrictions. *Id.* ¶¶ 38–39. Ashland refused, and did not reinstate Plaintiff. *Id.* ¶ 40.

Plaintiff brought this action on November 27, 2023, alleging violations of the Americans with Disabilities Act ("ADA"), the New Jersey Law Against Discrimination ("NJLAD"), and the

FMLA.  ECF No. 1.  In February 2024, Defendant moved to dismiss Plaintiff's FMLA claims. ECF No. 9.  The Court granted Defendant's motion, dismissing the FMLA claims without prejudice.  ECF No. 24.  Plaintiff submitted a third amended complaint, ECF No. 25, which Defendant now moves to dismiss in part.  ECF No. 27.

## II. DISCUSSION

Defendant moves to dismiss Count IV (ADA retaliation), Count VII (NJLAD retaliation), Count VIII (FMLA interference), and Count IX (FMLA retaliation) of the TAC.  ECF No. 27.  For the reasons discussed below, Defendant's motion is granted.

### A. FMLA

The FMLA provides an eligible employee with "a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee."[1]  29 U.S.C. § 2612(a)(1)(D).  An employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" under the FMLA.  29 U.S.C. § 2615(a)(1).  Plaintiff asserts claims for interference of her right to take FMLA-sanctioned leave (Count VIII) and retaliation for pursuing FMLA-sanctioned leave (Count IX).

#### 1. Interference

To state a claim for interference under the FMLA, Plaintiff must show that "(1) [s]he was entitled to benefits under the FMLA and (2) that [s]he was denied them."  *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 252 (3d Cir. 2014).  One of the rights the FMLA guarantees is "to be restored by the employer to the position of employment held by the employee [or an

---

[1] An employee is eligible under the FMLA if the employee has been employed "for at least 12 months by the employer" and "for at least 1,250 hours of service . . . during the previous 12-month period." 29 U.S.C. § 2611(2)(A).

equivalent position] when the leave commenced" upon return from FMLA leave. 29 U.S.C. § 2614(a)(1). "An employee may not be required to take more FMLA leave than necessary to resolve the circumstance that precipitated the need for leave." 29 C.F.R. § 825.311(c).

Plaintiff claims Defendant interfered with her right to reinstatement by failing to reinstate her. Defendant disagrees, arguing that Plaintiff was not entitled to reinstatement because she did not submit a statement from a healthcare provider certifying that she may return to work without restriction. *See* ECF No. 27 at 6. But Defendant's understanding of the FMLA as requiring such a certification is mistaken. Rather, the FMLA states only that an employer *may* have a policy that requires an employee on leave to provide a certification as a condition of reinstatement. *See Budhun*, 765 F.3d at 248 (requiring certification because the employer had a policy which "require[d] employees to submit a 'fitness-for-duty' certification in the form of a return to work form that confirms that the employee can work 'without restriction'"). Indeed, FMLA regulations state:

> As a condition of restoring an employee whose FMLA leave was occasioned by the employee's own serious health condition that made the employee unable to perform the employee's job, an employer *may have a uniformly-applied policy or practice* that requires all similarly-situated employees (i.e., same occupation, same serious health condition) who take leave for such conditions to obtain and present certification from the employee's health care provider that the employee is able to resume work.

29 C.F.R. § 825.312(a) (emphasis added). And to the extent an employer seeks to require a specific fitness-for-duty certification—such as one that states an employee can work without restriction—it must notify the employee of that requirement and "provide [the] employee with a list of the essential functions of the employee's job." *Id.* § 825.312(b); *see also Budhun*, 765 F.3d at 253 ("An employer may require that this certification address the employee's ability to perform the essential functions of her job, but only if the employer provides a list of essential functions to the

4

employee at the time that the employer notices the employee that she is eligible for FMLA leave."). There are no allegations in the TAC that indicate Defendant had a policy requiring such a certification. Nor does Defendant contend that it had such a policy. Therefore, Plaintiff's failure to provide a specific certification from a healthcare provider is not a sufficient ground for dismissal.

However, Plaintiff's FMLA interference claim fails for a different reason: she still required accommodations to perform the essential functions of her position. "The FMLA does not require that the employer provide accommodation to an employee to facilitate her return." *Fogleman v. Greater Hazleton Health All.*, 122 F. App'x 581, 587 (3d Cir. 2004) (holding employee had no right to reinstatement under the FMLA where she testified that she needed accommodations to return to work); *see also Deery v. Port Auth. Transit Corp.*, No. 05-1353, 2006 WL 2470380, at *4 (D.N.J. Aug. 23, 2006) (finding no FMLA interference where employee stated he "was able to perform all the essential functions of his job with one very minor accommodation"). Rather, "the employee must be able to perform the essential functions of the job without accommodation." *Fogleman*, 122 F. App'x at 587. Here, Plaintiff asserts that "at the conclusion of her FMLA leave, Plaintiff reached out to Defendant to reiterate that she was able to return to work *with accommodation* at the conclusion of her FMLA leave." TAC ¶ 28 (emphasis added). At no point in the TAC does Plaintiff allege she could return to work without needing an accommodation. Accordingly, Plaintiff had no right to reinstatement during the relevant period, and she fails to state a claim for FMLA interference.

  **2. Retaliation**

A retaliation claim under the FMLA requires Plaintiff to show that "(1) [she] invoked her right to FMLA-qualifying leave; (2) [she] suffered an adverse [action]; and (3) the adverse action was causally related to her invocation of rights." *Caplan v. L Brands/Victoria's Secret Stores*, 704

5

F. App'x 152, 155 (3d Cir. 2017) (quoting *Lichtenstein v. Univ. of Pitts. Med. Ctr.*, 691 F.3d 294, 302 (3d Cir. 2012)).

Plaintiff alleges that Defendant took two adverse actions in retaliation for her use of FMLA leave: (1) refusing to provide her with accommodations to facilitate her reinstatement after her FMLA leave, and (2) "terminating her for taking the FMLA leave of absence it asserted that she was eligible to take." TAC at 10. As discussed below, Plaintiff has not sufficiently alleged the third element—causality—for either basis.

Plaintiff's first alleged adverse action—Defendant's refusal to accommodate—is insufficiently pled as a basis for retaliation. Given that the FMLA does not require employers to provide accommodations to facilitate an employee's return to work, *see Fogleman*, 122 F. App'x at 587, it is not clear that a failure to accommodate can, as a matter of law, qualify as an adverse employment action for purposes of an FMLA retaliation claim. But even assuming, without deciding, that a refusal to accommodate could in some circumstances constitute an adverse action, Plaintiff has not plausibly alleged that the denial of accommodations here was retaliatory because she has not sufficiently alleged a causal connection.

To sufficiently allege a causal connection between a protected activity and the adverse employment action, plaintiffs may rely on either "an (1) unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing." *Clark v. Phila. Hous. Auth.*, 701 F. App'x 113, 116 (3d Cir. 2017).

First, there is no unusually suggestive temporal proximity. Plaintiff appears to suggest that Defendant denied her accommodation request because she took FMLA leave. But the TAC shows that Defendant's first denial of accommodations occurred *before* Plaintiff took FMLA leave. Plaintiff requested accommodations on February 8, 2023, which Defendant declined, and instead

6

encouraged Plaintiff to take FMLA leave, which she accepted. *See* TAC ¶¶ 22–27. Plaintiff's subsequent FMLA leave therefore could not have caused the earlier denial of accommodations.

Plaintiff's remaining theory appears to be that Defendant's second denial of accommodations in mid-March 2023 was retaliatory, based on Plaintiff's having taken FMLA leave approximately one month earlier, on February 16, 2023. That theory also fails. In the Third Circuit, "a temporal proximity greater than ten days requires supplementary evidence of retaliatory motive," which, as discussed below, Plaintiff does not provide. *Blakney v. City of Phila.*, 559 F. App'x 183, 186 (3d Cir. 2014). Accordingly, the Court will not infer that Defendant's second denial of accommodations was retaliatory.

Second, Plaintiff does not allege any pattern of antagonism. The TAC does not identify hostile statements, differential treatment, or any other facts suggesting retaliatory animus toward Plaintiff for taking FMLA leave. In the absence of any pleaded facts suggesting retaliatory motive, the TAC provides no basis to infer that Defendant's conduct was retaliatory rather than routine or neutral. Accordingly, Plaintiff has not plausibly alleged that Defendant's refusal to provide accommodations to facilitate her return to work was an adverse action taken because of her protected activity.

Plaintiff's second asserted basis for retaliation is that she was terminated at the end of her FMLA leave. This theory likewise fails to plausibly allege retaliation because it insufficiently pleads causation.

First, the timing of Plaintiff's termination is not unusually suggestive of retaliation. The Third Circuit has "found that a temporal proximity of two days is unusually suggestive of causation . . . but have held that a temporal proximity greater than ten days requires supplementary evidence of retaliatory motive." *Blakney*, 559 F. App'x at 186. Here, Plaintiff began her FMLA leave on February 16, 2023, her leave was extended in mid-March 2023, and her employment was

7

terminated months later, on August 18, 2023. TAC ¶¶ 25, 37. Standing alone, this temporal gap far exceeds periods of time the Third Circuit has deemed too attenuated to be probative of causation. *See, e.g.*, *LeBoon v. Lancaster Jewish Comm. Ctr. Ass'n*, 503 F.3d 217, 232–33 (3d Cir. 2007) (finding three-month gap not unusually suggestive). Therefore, temporal proximity carries no weight here.

Second, Plaintiff does not allege any pattern of antagonism suggesting that her termination was motivated by retaliatory animus. Plaintiff attempts to rely on Defendant's denial of her accommodation requests as evidence that her termination was retaliatory. But as discussed above, the TAC does not plausibly allege that the denial of accommodations was itself antagonistic, retaliatory, or otherwise suggestive of hostility toward Plaintiff for taking FMLA leave. Absent factual allegations that the accommodation decision reflected anything other than conduct the Third Circuit recognizes as permissible, that decision cannot support a claim that the later termination was retaliatory. Accordingly, Plaintiff's termination does not support a plausible FMLA retaliation claim.

## B. ADA and NJLAD Retaliation

"To state a claim for retaliation under the ADA or NJLAD, Plaintiff must . . . show 1) that she requested a reasonable accommodation, 2) that she suffered an adverse employment action, and 3) a causal connection between the two events."[2] *Adesanya v. Novartis Pharm. Corp.*, No. 13-5564, 2016 WL 4401522, at *7 (D.N.J. Aug. 15, 2016), *aff'd*, 755 F. App'x 154 (3d Cir. 2018). A plaintiff can demonstrate causation by alleging (1) "a close temporal relationship between the protected activity and the adverse employment action," or (2) facts that, "looked at as a whole,

---

[2] "Courts evaluate NJLAD and ADA claims under the same standard." *Pezza v. Middletown Twp. Pub. Schs.*, No. 18-16354, 2023 WL 8254431, at *9 (D.N.J. Nov. 29, 2023). As such, the Court will analyze these claims together.

8

raise the inference of causation." *Carmichael v. Thomson*, No. 14-3323, 2023 WL 1883347, at *9 (D.N.J. Feb. 10, 2023) (cleaned up).

Plaintiff's claims for retaliation under the ADA and NJLAD fail on the causation element. Plaintiff alleges that Defendant terminated her in retaliation for her accommodation request. TAC ¶¶ 58–59, 72–73. But Plaintiff does not allege unduly suggestive temporal proximity or any other facts that otherwise raise an inference of causation.

First, like in Plaintiff's FMLA retaliation claim, Plaintiff fails to allege unduly suggestive temporal proximity. Plaintiff requested an accommodation on February 8, 2023, and in mid-March 2023. *Id.* ¶¶ 18, 28. Plaintiff was terminated on August 18, 2023. *Id.* ¶ 37. A five-month gap between Plaintiff's latest accommodation request (mid-March) and Plaintiff's termination (mid-August) does not, by itself, support an inference of causation. *See, e.g.*, *Yovtcheva v. City of Phila. Water Dep't,* 518 F. App'x 116, 123 (3d Cir. 2013) (finding three months between accommodation request and termination insufficient to infer causation). Plaintiff attempts to argue that there was suggestive temporal proximity between (1) her August 2023 communication to Defendant "asserting that she did not intend to resign from employment, and rather that she wished to return to work with minor restrictions," and (2) Defendant's decision to not reinstate her. TAC ¶¶ 39–40. But the August 2023 communication was *after* Plaintiff's termination, *see id*. ¶¶ 37–40, and so could not be the basis for her termination.

Plaintiff has also failed to allege any other facts indicating that she was terminated because she requested accommodations. In her opposition brief, Plaintiff asserts that the TAC "allege[s] a pattern of inconsistent explanation in that Defendant originally ignored the notes of her own physician and a vocational specialist, insisting that Plaintiff take extended FMLA leave." ECF No. 34 at 13. But the TAC contains no allegations of a pattern of inconsistent explanations, or any explanation offered by Defendant. The only remaining allegation to support causation, then, is

9

that Defendant encouraged Plaintiff to extend her FMLA leave in response to her request for accommodations, instead of reinstating her with accommodations. *See id.* at 14. This allegation alone is insufficient to support a claim for retaliation under the ADA or NJLAD. *See Goodwin v. Univ. of Pa.*, No. 23-3211, 2024 WL 4678877, at *3 (3d Cir. Nov. 5, 2024) (dismissing ADA claim where plaintiff failed to allege temporal proximity or any other "pattern of antagonism"). Accordingly, Plaintiff fails to allege a plausible retaliation claim under the ADA or NJLAD.

**Accordingly, IT IS**, on this 27th day of January, 2026,

**ORDERED** that Defendants' motion (ECF No. 27) is **GRANTED**, and Counts IV, VII, VIII, and IX of the TAC are **DISMISSED**; and it is further

**ORDERED** that Plaintiff shall have twenty-one (21) days from entry of this Opinion and Order to submit an amended complaint that addresses the deficiencies identified in this Opinion and Order. Insofar as Plaintiff submits a further amended complaint, she shall also provide a form of the amended complaint that indicates in what respect it differs from the current complaint, by bracketing or striking through materials to be deleted and underlining materials to be added. *See* L. Civ. R. 15(a)(2).

**SO ORDERED.**

                                                  */s/ Claire C. Cecchi*
                                                  **CLAIRE C. CECCHI, U.S.D.J.**